IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ADVOCAT INC.; DIVERSICARE
MANAGEMENT SERVICES COMPANY;
DIVERSICARE LEASING CORPORATION,
doing business as CONWAY HEALTHCARE
AND REHABILITATION CENTER

PLAINTIFFS

v.                              No. 4:11CV00895 JLH

RICHARD W. BLANCHARD, as
Special Administrator of the Estate
of Richard E. Blanchard, Deceased, and
on behalf of the Wrongful Death Beneficiaries
of Richard E. Blanchard                                         DEFENDANT

**OPINION AND ORDER**

Advocat Inc., Diversicare Management Services Company, and Diversicare Leasing Corporation (collectively "the nursing home parties") bring this action to compel Richard W. Blanchard to arbitrate claims brought by Blanchard in the Circuit Court of Faulkner County, Arkansas. The complaint in that action seeks relief for the wrongful death of Richard E. Blanchard and asserts claims for negligence, medical malpractice, breach of contract, and violations of the Arkansas Long-Term Care Facility Resident's Act. The administrator of the nursing home, Rhonda Stout, also is a defendant in that action, and she was originally a plaintiff in this action.

In their answer filed in the Faulkner County Circuit Court, the nursing home parties asserted as an affirmative defense that Blanchard's claims are barred from being litigated in a court of law by virtue of an arbitration agreement. Subsequently, the nursing home parties filed the complaint to compel arbitration presently before this Court. Blanchard moved to dismiss the action for lack of subject matter jurisdiction. The nursing home parties filed an amended complaint, which omitted

Stout, thereby creating diversity of citizenship, so the Court denied the motion to dismiss as moot because subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.

Now, Blanchard has filed a motion asking the Court to abstain in favor of the proceedings in Faulkner County Circuit Court. Alternatively, Blanchard requests an order permitting discovery related to the arbitration agreement. The nursing home parties contend that it would be improper for the Court to abstain in this instance, and that discovery is not appropriate at this time. As will be explained, the courts of appeal have held that abstention is not appropriate in cases such as this. Moreover, Blanchard presently is not entitled to discovery.

**I.**

The Supreme Court has said that "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.' " *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15, 103 S. Ct. 927, 936, 74 L. Ed. 2d 765 (1983) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483 (1976)). Nevertheless, in certain exceptional circumstances, federal courts may dismiss an action based "on considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Colo. River*, 424 U.S. at 817, 96 S. Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S. Ct. 219, 221, 96 L. Ed. 200, 203 (1952)). Blanchard contends that the exceptional circumstances envisioned by the Supreme Court in *Colorado River* are present here.

In *Colorado River*, the Supreme Court cautioned that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for [the other

forms of] abstention." 424 U.S. at 818, 96 S. Ct. at 1246.[1] First, a necessary prerequisite to abstention pursuant to *Colorado River* is that " 'there must be pending parallel state and federal court proceedings[.]' " *United States v. Rice*, 605 F.3d 473, 476 (8th Cir. 2010) (quoting *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009). "The prevailing view is that state and federal proceedings are parallel for purposes of *Colorado River* abstention when substantially similar parties are litigating substantially similar issues in *both* state and federal court." *Fru-Con Const. Corp.*, 574 F.3d at 535 (emphasis in original).[2] However, "[t]he pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient" because the Eighth Circuit requires more precision. *Id.* (citing *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297). "Rather, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.* (citing *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005)).

---

[1] Although the Supreme Court has refused to characterize the doctrine articulated in *Colorado River* as an abstention doctrine, the doctrine nevertheless is commonly referred to as one. *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 295 n.1 (8th Cir. 1995).

[2] In *Fru-Con*, the majority held that the district court abused its discretion by abstaining. 574 F.3d at 540. However, the panel disagreed as to the underlying rationale. Judge Beam concluded that the proceedings were not parallel and, consequently, that *Colorado River* did not apply. *Id.* at 535-38. Judge Beam's conclusion rested on the proposition that the proceedings must be parallel at the time the federal action is originally filed. *Id.* Nonetheless, Judge Beam also analyzed the *Colorado River* factors and concluded that, even if the proceedings were parallel, abstention was not appropriate. *Id.* at 538-40. Judge Bye concurred in the result based on the *Colorado River* factors. *Id.* However, Judge Bye joined the dissenting author, Judge Shepherd, in rejecting the "originally filed" approach to determining whether actions are parallel. *Id.* Judges Bye and Shepherd held that the district court must determine whether the state court action and the federal action "are 'parallel proceedings' as they actually existed when the district court abstained." *Id.* at 545 (citing *Baskin v. Bath Tp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994) (quotation and alteration omitted)).

The claim asserted here by the nursing home parties—that the dispute must be submitted to arbitration—is also asserted by them in the Faulkner County Circuit Court case as an affirmative defense. Hence, whether the dispute must be submitted to arbitration will be resolved in state court. The nursing home parties say that they have not filed a motion to compel arbitration in state court, so the proceedings are not parallel. Even so, the arbitration defense inevitably will be resolved in state court either on the merits or by virtue of the fact that the nursing home defendants waive the defense. That the nursing home parties might choose to waive the defense in state court does not change the fact that the claim asserted here is exactly the same as the affirmative defense asserted in state court. Nor does it change the fact that the state court action will fully dispose of the defense either on a motion to compel arbitration or in virtue of the nursing home parties' procedural default of the claim. *See* Ark. Code Ann. § 16-108-207 (a party alleging that an arbitration agreement exists must file a motion to compel arbitration). Therefore, this case and the case pending in Faulkner County Circuit Court are parallel proceedings for the purposes of applying *Colorado River*.

Where, as here, the proceedings are parallel, the *Colorado River* and *Moses H. Cone* decisions offer six non-exhaustive factors to guide a district court in determining "whether . . . exceptional circumstances warrant abstention." *Fru-Con Const. Corp.*, 574 F.3d at 534. These factors are:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Id.* (quoting *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006)).

Here, the parties agree that the first two factors, res and convenience of forum, are not implicated and do not weigh in favor of or against abstention. *But see Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006) (the absence of a res means that this factor supports exercising federal jurisdiction).

Respecting the third factor, the Federal Arbitration Act "not only contemplates piecemeal litigation, but 'requires piecemeal resolution when necessary to give effect to an arbitration agreement.'" *Bank One, N.A. v. Boyd*, 288 F.3d 181, 185 (5th Cir. 2002) (quoting *Moses H. Cone*, 460 U.S. at 20, 103 S. Ct. at 939). "Hence, a decision to allow that issue to be decided in federal rather than state court does not cause piecemeal resolution of the parties' underlying disputes." *Moses H. Cone*, 460 U.S. at 20, 103 S. Ct. at 939. Furthermore, the issue of arbitrability "is easily severable from the merits of the underlying disputes." *Id.* at 21, 103 S. Ct. at 939; *see also Gov't Emps. Ins. Co. v. Simon*, 917 F.2d 1144, 1148-49 (8th Cir. 1990). Thus, "[t]here is no force here to the consideration that was paramount in *Colorado River* itself—the danger of piecemeal litigation." *Id.* at 19, 103 S. Ct. at 939; *see also Fru-Con Const. Corp.*, 574 F.3d at 539; *Bank One, N.A.*, 288 F.3d at 185; *First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1364 (11th Cir. 1998); *Regions Bank v. Chanda*, No. 11-2296, 2011 WL 4352722, at *3 (W.D. Tenn. Sept. 16, 2011).

Regarding the fourth factor, it is true that Blanchard's complaint was filed in state court before the nursing home parties initiated the instant action. However, a motion to compel arbitration is, by nature, a response to a parties refusal to arbitrate—a refusal expressed by Blanchard when he filed the state court action. *See Moses H. Cone*, 460 U.S. at 21, 103 S. Ct. at 939. More importantly, "'priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Mountain Pure, LLC*, 439 F.3d at 927 (quoting *Moses H. Cone*, 460 U.S. at 21, 103 S. Ct. at 940). Furthermore, "priority of

5

filing includes [the federal] plaintiff's choice of forum." *Fru-Con Const. Corp.*, 574 F.3d at 539-40 (collecting cases).

The nursing home parties have asked this Court to compel arbitration, but they have not yet filed a motion in Faulkner County Circuit Court asking that court to compel arbitration. *See* Ark. Code Ann. § 16-108-207. Thus, this Court is further along the path to resolving the arbitrability dispute than the state court. Therefore, this factor does not favor abstention. *See Fru-Con Const. Corp.*, 574 F.3d at 539-40; *First Franklin Fin. Corp.*, 144 F.3d at 1365; *Gov't Emps. Ins. Co.*, 917 F.2d at 1149 (state court action pending but no trial set); *Regions Bank*, 2011 WL 4352722, at *4; *see also Moses H. Cone*, 460 U.S. at 21, 103 S. Ct. at 940; *Mountain Pure, LLC*, 439 F.3d at 927.

As to the fifth factor, the nursing home parties concede that, in addition to issues implicating the Federal Arbitration Act and the Commerce Clause, the instant action involves a dispute about whether the arbitration agreement is valid. In determining whether an arbitration agreement is valid, state law controls. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). The nursing home parties contend that Ark. Code Ann. § 20-9-602(11)[3] provides a basis for enforcing the arbitration agreement, but the Arkansas courts have not resolved whether section 20-9-602(11) applies to arbitration agreements. *Cf. Waverly-Ark., Inc. v. Keener*, No. CA07-524, 2008 WL 316149, at *4 (Ark. App. 2008) (declining to consider argument because it was raised for the first time on appeal).

---

[3] Subsection 20-9-602(11) provides that "Any adult child, for his or her mother or father of unsound mind[,]" may "consent, either orally or otherwise, to any surgical or medical treatment or procedure not prohibited by law that is suggested, recommended, prescribed, or directed by a licensed physician[.]"

Nevertheless, " 'the presence of state law issues [in federal court] will weigh in favor of abstention only in rare circumstances.' " *Fru-Con Const. Corp.*, 574 F.3d at 539 (alteration in original) (quoting *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299). Furthermore, as a general rule, "difficulties and perplexities of state law are no reason for referral of the problem to the state court[.]" *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 673 n.5, 83 S. Ct. 143, 1436 n.5, 10 L. Ed. 2d 622 (1963) (citing *Meredith v. City of Winter Haven*, 320 U.S. 228, 237, 64 S. Ct. 7, 12, 88 L. Ed. 9 (1943)); *cf. Colo. River*, 424 U.S. at 816, 96 S. Ct. at 1245 (citing *Meredith* for the proposition that "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction."). This is especially true where, as here, the issue implicates federal law, such as the federal policy favoring arbitration, because "the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26, 103 S. Ct. at 942; *compare La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 27-28, 79 S. Ct. 1070, 1072-73, 3 L. Ed. 2d 1058 (1959) (despite *Meredith* rule, finding abstention appropriate in an eminent domain case involving difficult issues of state law because of the particularly local concerns implicated by eminent domain).

Consequently, even if the presence of a novel issue of state law may weigh in favor of abstention, the Court cannot say, in light of the decisions of the higher courts, that "there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of [its] jurisdiction." *Id.* at 25-26, 103 S. Ct. at 942 ("[W]e emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court[.]") (emphases in original); *see also PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 209 (6th Cir. 2001) (no exceptional circumstances warranting abstention where only one factor

7

"clearly supports abstention"); *First Franklin Fin. Corp.*, 144 F.3d at 1365 (this factor points to exercising jurisdiction where petition is brought pursuant to the Federal Arbitration Act).

The sixth "factor counts for or against abstention and dismissal only where 'one of the forums is *inadequate* to protect a party's rights.' " *Fru-Con Const. Corp.*, 574 F.3d at 539 (emphasis in original) (quoting *Gov't Emps. Ins. Co.*, 917 F.2d at 1149). Here, both this Court and the Faulkner County Circuit Court are adequately equipped to protect the parties rights vis-a-vis the arbitrability issue. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."); *Myer v. Americo Life, Inc.*, 469 F.3d 731, 735 (8th Cir. 2006) (state courts are required to apply the Federal Arbitration Act). Therefore, the sixth factor does not favor arbitration.

Finally, the Court should consider "whether the federal or state suit is filed as for a vexatious, reactive or tactical reason." *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299 (citing *Moses H. Cone*, 460 U.S. at 17, 103 S. Ct. at 937). Although the nursing home parties' complaint to compel arbitration is reactive, a request to compel arbitration is reactive by nature. *See Moses H. Cone*, 460 U.S. at 21, 103 S. Ct. at 939. The Court cannot say that the nursing home parties have acted improperly because they chose to exercise their right, under federal law, to select a federal forum wherein to bring their complaint to compel arbitration.

As the *Colorado River* and *Moses H. Cone* factors have been weighed by the courts of appeal in cases similar to this one, the requisite exceptional circumstances are not present to justify abstention. *See Bank One*, 288 F.3d at 187 (holding that the district court abused its discretion by abstaining in a similar case); *First Franklin Fin. Corp.*, 144 F.3d at 1365 (same). The Court has

found no decisions from the courts of appeal contrary to *Bank One* and *First Franklin* and will therefore follow those decisions here.

## II.

Having concluded that abstention would be improper in light of precedent from the courts of appeal, the Court must address Blanchard's request for discovery related to the enforceability of the arbitration agreement. Specifically, Blanchard wishes to depose the affiants of the affidavits which the nursing home parties attached to their complaint to compel arbitration. He also wishes to conduct discovery regarding the negotiation, execution, and enforcement of the arbitration agreement.

The Federal Arbitration Act "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Moses H. Cone*, 460 U.S. at 29, 103 S. Ct. at 944. "The purpose of the FAA is 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.' " *Koch v. Compucredit Corp.*, 543 F.3d 460, 463 (8th Cir. 2008) (quoting *Moses H. Cone*, 460 U.S. at 22, 103 S. Ct. at 940). In light of the Congressional intent underlying the Act, some courts have held that parties are only entitled to "discovery in aid of arbitration" where "extraordinary circumstances" exist. *See Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 479 (4th Cir. 1999) (collecting cases).

However, those cases involved attempts to discover evidence relevant to the disputes which were to be settled by the arbitrator, rather than discovery into the validity or enforceability of the arbitration agreements themselves. Recognizing this distinction, some courts have held that limited pre-arbitration discovery may be permitted into "issues relating to the making and performance of the agreement to arbitrate" where " 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.' " *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4); *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1085 (9th Cir. 2008)

9

(remanding case to district court to expand the record on the issue of procedural unconscionability); *Coneff v. AT & T Corp.*, No. 0944, 2007 WL 738612, at *2-3 (W. D. Wash. Mar. 9, 2007) (allowing discovery requests related to the issue of unconscionability but not the merits of the parties' underlying dispute). Courts temper this rule by denying discovery requests that are too broad, seek irrelevant information, or seek information already within the personal knowledge of the party requesting discovery. *See Bell v. Koch Foods of Miss., LLC*, 358 Fed. App'x 498, 501 (5th Cir. 2009) (district court correctly denied discovery request where "the requested information was either irrelevant, already within the personal knowledge of the [parties seeking discovery], or did not support a recognizable claim under [state] law."); *Meyer v. T-Mobile USA Inc.*, No. C 10-05858, 2011 WL 4434810, at *10 (N.D. Cal. Sept. 23, 2011) (discovery request denied where overly broad).

The nursing home parties rely on a decision from the Western District of Arkansas resolving a case strikingly similar to the instant action. *Northport Health Servs. of Ark., LLC v. Robinson*, No. Civ. 08-5223, 2009 WL 140983, at *2 (W.D. Ark. Jan. 12, 2009). In *Robinson*, the daughter of a woman who died in the care of a nursing home brought a state action for wrongful death. *Id.* at *1. The nursing home filed suit in federal court asking for an order compelling arbitration. *Id.* The daughter challenged the validity of the arbitration agreement and sought discovery into the circumstances surrounding the execution of the agreement, including into the nature of the explanation made by the nursing home regarding the agreement at the time it was executed and into the validity of various documents authorizing her to execute the agreement. *Id*. at *2. In addressing the discovery request, the court observed that "[d]iscovery related to the validity of an arbitration agreement is necessarily limited, in light of the goal of quickly moving matters subject to arbitration out of the judicial and into the arbitral forum." *Id.* (citing 9 U.S.C. § 4; *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 509-11 (7th Cir. 2003) (limited discovery permitted where relevant to validity of

10

agreement)). In light of this rule, the Court denied the request for discovery because the daughter had signed the agreement and, therefore, had personal knowledge of the circumstances of its execution and of what she had been told about it, as well as of her authority to execute the agreement.

Similarly, Blanchard's request for permission to depose the nursing home parties' affiants focuses on the procedures employed *vis-a-vis* the arbitration agreement during his father's admission to the nursing home. Blanchard contends that the nursing home parties' affidavits are vague or focus on the nursing home's typical admission procedures rather than focusing on the negotiation and execution of the specific agreement implicated here. Nevertheless, Blanchard was the one who executed the agreement and, consequently, is familiar with the circumstances of the presentation, negotiation, and execution of the agreement. Blanchard can compare his experience with the affidavit testimony to determine whether the nursing home followed its typical procedures in his father's case. Therefore, as in *Robinson*, discovery on that issue is unnecessary. *See also Bell v. Koch Foods of Miss., LLC*, 358 Fed. App'x 498, 501 (5th Cir. 2009).

Blanchard seeks other discovery to "develop facts in support of additional defenses to enforcement of [the] agreement, such as unconscionability and lack of mutuality." With respect to any facts arising out of the circumstances of Blanchard's execution of the agreement, additional discovery is unnecessary for the reasons discussed above. Similarly, Blanchard offers no reason for why he would not be familiar with any power of attorney authorizing him to execute the agreement.[4] Hence, he does not need to conduct discovery into "the enforceability of the purported power of attorney [the nursing home parties] rely upon."

---

[4] The nursing home parties attached a copy of a document entitled "General Durable Power of Attorney of Richard E. Blanchard" signed by the decedent and naming "Richard W. Blanchard" as the first alternate successor attorney-in-fact.

11

Otherwise, Blanchard has not provided the court with a justification for granting his discovery request. Blanchard has offered no reasonably specific allegation as to what facts he hopes to discover which would undermine the validity of the agreement.[5] Nor has he addressed the scope of his proposed "other fact-finding," including what limitations would apply to this additional discovery. In light of the goal of quickly moving matters subject to arbitration out of the judicial and into the arbitral forum, it would be inappropriate to grant Blanchard's request for discovery at this time. *Cf. Meyer v. T-Mobile USA Inc.*, No. C 10-05858, 2011 WL 4434810, at *10 (N.D. Cal. Sept. 23, 2011).

## CONCLUSION

For the reasons stated, Richard W. Blanchard's Motion to Abstain, or, in the Alternative, for Order Permitting Discovery is DENIED. Document #11.

IT IS SO ORDERED this 24th day of May, 2012.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[5] Blanchard does allege that the nursing home parties failed to provide him with a copy of the agreement. However, the nursing home parties have attached a copy of the agreement to their response to the instant motion. He also says that discovery should be allowed as to whether there is a nexus with interstate commerce, but he does not specify what discovery might reveal to dispute the affidavits filed by the nursing home parties stating that the decedent took medications that traveled in interstate commerce.